IRA DANIEL TOKAYER, ESQ. (IT-4734)
Attorney for Defendant
42 West 38th Street, Suite 802
New York, New York 10018
(212) 695-5250

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------x

CERVECERIA MODELO, S.A. DE C.V.      :   07 CV 7998 (HB)
and MARCUS MODELO S.A. DE C.V.,
                                     :

                    Plaintiffs,
                                     :

          -against-
                                     :

USPA ACCESSORIES LLC d/b/a
CONCEPT ONE ACCESSORIES,             :

                    Defendant.       :

-----------------------------------x

DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFFS' MOTION
TO DISMISS THE THIRD COUNTERCLAIM

          Defendant USPA Accessories LLC d/b/a Concept One

Accessories ("Concept One"), by its attorney, Ira Daniel Tokayer,

Esq., submits this Memorandum of Law in opposition to defendant's

motion to dismiss the third counterclaim contained in the Answer

of Concept One, dated October 22, 2007.

Preliminary Statement

          Plaintiffs' motion to dismiss the third counterclaim

for tortious interference with contracts set forth in the Answer

must be denied as moot because the Answer has been superseded by

the Amended Answer which Concept One has filed as of right.

(Point I.)  Moreover, any purported pleading defect raised by

plaintiffs' motion papers has been cured by the Amended Answer which identifies specific orders with which plaintiffs knowingly and intentionally interfered through improper means, resulting in the cancellation of those orders to Concept One's damage. (Point II.) Such claim supports an award of punitive damages. (Point III.)

<u>Facts</u>

This case involves plaintiffs' efforts to deny Concept One the bargained-for and paid-for benefits of its License Agreement. In violation of the covenant of good faith and fair dealing, plaintiffs have sought to thwart Concept One from exploiting its rights under the License Agreement by improperly and without any business justification failing to approve Corona-brand products and designs for distribution and sale. As conclusive evidence of its bad faith, plaintiffs advised Concept One that they were improperly using the approval procedure contained in the Agreement for the purpose of preventing Concept One from exploiting its license. Out of over 350 products submitted by Concept One for approval, only six have been approved by plaintiffs. (<u>See</u> Amended Answer, ¶¶ 97-99.)[1]

---

[1] Plaintiffs' claim that the products submitted by Concept One violated the "strict quality control" standards of the License Agreement will be demonstrated to be without basis. The License Agreement contained no such standards, Concept One's products were of the highest quality and, in fact, the products exceeded the quality of Corona-brand products currently being

(continued...)

Plaintiffs have also tortiously interfered with Concept One's business. Plaintiffs surreptitiously delivered correspondence to third-parties falsely representing that Concept One was in breach of its obligations under the License Agreement and erroneously implying that the License Agreement was properly terminated. These representations were made as assertions of fact although in fact it was plaintiffs who were in breach of the License Agreement. Plaintiffs' conduct resulted in the improper and intended consequence of Concept One's buyers canceling orders, including but not limited to:

- an order by Wal-Mart Stores on or about March 20, 2007, for Corona-brand hats in the approximate amount of $38,000;

- and order by Wal-Mart Stores on or about May 31, 2007, for Corona-brand combos in the approximate amount of $680,476; and

- an order by Wal-Mart Stores on or about June 11, 2007, for Corona-brand flip-flops in the approximate amount of $3,500,000,

- an order by Spencer's on or about July 18, 2007, for Corona-brand hats in the approximate amount of

---

[1](...continued)
distributed and sold in the market. Indeed, many of the products rejected by plaintiffs had been previously and unconditionally approved.

3

$57,408;

• an order by Spencer's on or about July 18, 2007, for Corona-brand combos in the approximate amount of $359,424;

among others.  (See Amended Answer, ¶¶ 106-116.)

ARGUMENT

I

DEFENDANT HAS AMENDED THE SUBJECT ANSWER

Fed. R. Civ. P. 15(a) provides that a party may amend a pleading "once as a matter of course at any time before a responsive pleading is served."

This action was commenced on or about September 12, 2007.  Defendant timely served its Answer with Counterclaims on October 22, 2007.  Plaintiffs responded by filing this motion to dismiss.  It is well-settled that a motion to dismiss is not a "responsive pleading" within the meaning of Rule 15(a).  See Barbara v. New York Stock Exchange, Inc., 99 F.3d 49, 56 (2d Cir. 1996).  Thus, Concept One was entitled to, and did serve its Amended Answer as of right.

Because the Amended Answer supersedes the Answer and becomes the operative pleading, plaintiffs' motion to dismiss addressed to the original Answer should be denied as moot.  See, e.g., Silverman v. Senft, 1986 WL 6786 (S.D.N.Y. June 13, 1986).

4

II

THE AMENDED ANSWER STATES A CLAIM
FOR TORTIOUS INTERFERENCE
WITH BUSINESS RELATIONS

In its Amended Answer, Concept One has denied the
material allegations of the Complaint, asserted affirmative
defenses and set forth counterclaims, inter alia, for breach of
contract and tortious interference with contractual relations.
Under New York law, the elements of a claim for tortious
interference with contractual relations may be sufficiently
stated as follows:

> The existence of a valid contract with a
> third party, defendant's knowledge of that
> contract, defendant's intentional and
> improper procuring of a breach, and damages.

New York Merchants Protective Co. v. Rodriquez, 41 A.D.3d 565,
566, 837 N.Y.S.2d 341, 342 (2d Dept. 2007).  Accord,
International Minerals and Resources, S.A. v. Pappas, 96 F.3d
586, 595 (2d Cir. 1996).

The legal standards for a motion to dismiss are
undoubtedly well known to this Court.  On such a motion, the
court must accept the pleader's allegations as true, read the
pleading liberally and draw all inferences in favor of the
pleading party.  See, e.g., IUE AFL-CIO Pension Fund v. Herrmann,
9 F.3d 1049, 1053 (2d Cir. 1993), cert. denied, 513 U.S. 822
(1994).  "The district court should deny the motion to dismiss
unless it appears to a certainty that [the pleader] can prove no

5

set of facts entitling [it] to relief." Id. As the Court has
stated, dismissal is proper "only where it appears beyond doubt
that the plaintiff can prove no set of facts in support of his
claim which would entitle him to relief." Allen v. WestPoint-
Pepperell, Inc., 945 F.2d 40, 43 (2d Cir. 1991). Tort claims
specifically are subject to the "notice" requirement of Rule
8(a)(2), "which does not require the pleading of 'facts' or
'ultimate facts' or 'facts sufficient to constitute a cause of
action.'" Blank v. Baronowski, 959 F. Supp. 172, 179 n. 5
(S.D.N.Y. 1997).

        Under this standard, plaintiffs' motion to dismiss - if
deemed addressed to the Amended Answer - would have to be denied
because the Amended Answer sufficiently states all the elements
of a claim for tortious interference with contractual relations.
Specific contractual relations are alleged; it is alleged that
plaintiffs knew of the contracts; and that plaintiffs
intentionally procured a breach of those contracts through
improper means including false representations. Finally, it is
alleged that contracts were in fact canceled causing damage to
Concept One.

        Contrary to plaintiffs' contention, there is no
requirement that the interference involve "wrongful means." That
standard applies only to claims for tortious interference with
prospective business relations. As the court has stated:

6

> [W]here there is an existing, enforceable
> contract and a defendant's deliberate
> interference results in a breach of that
> contract, a plaintiff may recover damages for
> tortious interference with contractual
> relations even if the defendant engaged in
> lawful behavior.

NBT Bancorp Inc. v. Fleet/Norstar Financial Group, Inc., 87

N.Y.2d 614, 641 N.Y.S.2d 581, 585 (1996).  Nonetheless, such

"wrongful means" have been alleged herein.  See Guard-Life Corp.

v. S. Parker Hardware Mfg. Corp., 50 N.Y.2d 183, 191, 428

N.Y.S.2d 628 (1980) ("fraud and misrepresentation" constitute

"wrongful means").[2]

Plaintiffs' bald claim that they were acting to protect

their alleged trademark rights does not mandate dismissal of the

claim at this early stage.  "Generally, justification is for the

jury."  United Euram Corp. v. Occidental Petroleum Corp., 123

Misc. 2d 574, 576, 474 N.Y.S.2d 372 (N.Y. Civ. Ct. 1984).  Here,

whether plaintiffs were acting to protect their rights is hotly

disputed.  The failure to approve virtually all of plaintiffs

products and designs - many of which had been previously approved

- belies the claim that plaintiffs were acting legitimately to

protect their interests.  Plaintiffs' admission that they

regretted the License Agreement and were using the approval

---

[2]  P. Kaufmann, Inc. v. Americraft Fabrics, Inc., 232 F.
Supp. 2d 220 (S.D.N.Y. 2002); and Golden Gulf Corp. v. Jordache
Enterprises, Inc., 896 F. Supp. 337 (S.D.N.Y. 1995), cited by
plaintiffs, are inapposite.  Those cases appear to deal with
prospective business relations, not interference with existing
contracts, as here.

process to thwart Concept One from exploiting its license signifies an improper motive, akin to malice and bereft of legitimate business purpose.

Moreover, plaintiffs' rights do not justify the means employed by plaintiffs, including false representations to third parties that Concept One was in breach of the License Agreement when in fact it was plaintiffs who were in breach.  Instead of advising of their own misconduct or Concept One's position that the License Agreement was in full force and effect, plaintiffs represented Concept One's breach as an adjudicated fact.  Such misrepresentation is actionable even under the standard applicable to claims for tortious interference with prospective business relations.  <u>See</u> <u>TVT Records v. Island Def Jam Music Group</u>, 244 F. Supp. 2d 263, 274 (S.D.N.Y. 2003) ("fraud does preclude the economic justification defense to a tortious interference claim").

<u>Leopold v. Henry I. Siegel Co.</u>, 1987 WL 5373 (S.D.N.Y. Jan. 5, 1987), upon which plaintiffs heavily rely, is readily distinguishable.  There, on a motion for summary judgment, the court found that plaintiff's communications directly to the defendant which merely informed of its intention to enforce its rights were non-actionable.  In stark contrast, on this motion to dismiss, plaintiffs communicated directly with third-parties and falsely represented that defendant was in breach of the License

8

Agreement, among other things.  Thus, plaintiffs have done more than merely inform Concept One of their intention to enforce their rights.  Acting as judge, jury and executioner, plaintiffs represented to the world at large as a fact something that was at best the subject of dispute and at worst intentionally fraudulent if the Court accepts as true the allegation that it was plaintiffs who were in breach of the License Agreement, as the Court must for purposes of this motion.

Certainly, it cannot be said at this early stage that Concept One can prove no set of facts in support of its claim which would entitle it to relief.  See Independence Tube Corp. v. Copperweld Corp., 691 F.2d 310, 323 (7th Cir. 1982) (rejecting claim that "a belief that one has legal rights, however mistaken, can excuse any action, however disproportionate, to protect one's interests"), rev'd on other grounds, 467 U.S. 752 (1984); Mina Investment Holdings Ltd. v. Lefkowitz, 184 F.R.D. 245 (S.D.N.Y. 1999) (whether interference will be deemed "improper" is a "factually sensitive issue" under the factors set forth in § 767 of the Restatement of Torts); Upjohn Co. v. Riahom Corp., 650 F. Supp. 485, 489 (D. Del. 1986) (whether plaintiff asserted its patent rights "in good faith" or by "appropriate means" precluded summary judgment).

Thus, the Amended Answer sufficiently states a claim for tortious interference with contractual relations.

9

III

THE AMENDED ANSWER STATES A CLAIM
FOR PUNITIVE DAMAGES

Under New York law, "punitive damages are available in a tort action where the wrongdoing is intentional or deliberate, has circumstances of aggravation or outrage, has a fraudulent or evil motive, or is in such conscious disregard of the rights of another that it is deemed willful and wanton." Swersky v. Dreyer and Traub, 219 A.D.2d 321, 643 N.Y.S.2d 33 (1st Dept. 1996).  The allegation that plaintiffs' conduct was "wilful, wanton, and performed recklessly and in conscious disregard of Concept One's rights" (Amended Answer, ¶ 115) meets this standard for punitive damages.

Claims for tortious interference with contractual relations in particular have been found to support an award of punitive damages under New York law. See Serota v. Mayfair Super Markets, Inc., 15 A.D.3d 385, 790 N.Y.S.2d 173 (2d Dept. 2005); Catinella v. Mel Weitz Supermarkets, Inc., 286 A.D.2d 361, 728 N.Y.S.2d 721 (2d Dept. 2001); Maxan Curtain Mfg. Corp. v. Chemical Bank, 230 A.D.2d 832, 646 N.Y.S.2d 701 (2d Dept 1996).  The New York High Court has rejected the argument urged upon this Court by plaintiffs that punitive damages may not be awarded unless there is harm "aimed at the public generally."  Such conduct is not required for claims sounding in tort or for other non-contract claims.  See Giblin v. Murphy, 73 N.Y.2d 769, 536

10

N.Y.S.2d 54, 56 (1988).  <u>Accord</u>, <u>Blank v. Baronowski</u>, 959 F.

Supp. 172, 180 (S.D.N.Y. 1997) ("punitive damages are allowable

in tort cases involving claims for fraud, breach of fiduciary

duty or tortious interference with contract even if there is no

harm aimed at the general public").

<u>Conclusion</u>

WHEREFORE, defendant respectfully requests that

plaintiffs' motion be denied in its entirety.

Dated:  New York, New York
        December 11, 2007


                              _____/s/_____
                              IRA DANIEL TOKAYER, ESQ. (IT-4734)
                              Attorney for Defendant
                              42 West 38th Street, Suite 802
                              New York, New York 10018
                              (212) 695-5250


MOT DISMISS MOL.wpd

11
