**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x
                                                   :

**CERVECERIA MODELO, S.A. DE C.V. and**      :
**MARCAS MODELO, S.A. DE C.V.,**          :
                                                   :
                   **Plaintiffs,**         :
                                                   :       07 Civ. 7998 (HB)
        **- against -**                :
                                                     :       <u>OPINION & ORDER</u>
**USPA ACCESSORIES LLC d/b/a CONCEPT ONE**  :
**ACCESSORIES,**                        :
                                                   :
                   **Defendant.**        :
                                                   :
------------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:**

       Plaintiffs Cerveceria Modelo, S.A. de C.V. ("Cerveceria Modelo") and Marcas Modelo,

S.A. de C.V. ("Marcas Modelo") move this Court pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss

the counterclaim for tortious interference with contract brought by Defendant USPA Accessories

LLC d/b/a Concept One Accessories ("Concept One"). Plaintiffs also move to strike Concept

One's request for punitive damages. For the reasons set forth below, Defendant's counterclaim

is hereby dismissed with leave to replead to include allegations that third-party retailers

explicitly "breached" their contracts with Defendant. Plaintiffs' motion to strike Defendant's

request for punitive damages is granted.

## I. FACTUAL BACKGROUND

       Plaintiff Cerveceria Modelo produces and sells various brands of beer, including Corona

Extra and Corona Light ("Corona Beer"). Compl. ¶ 9. Plaintiff Marcas Modelo, an affiliate of

Cerveceria Modelo, is the authorized licensor of Cerveceria Modelo's registered trademarks,

including Corona Beer trademarks, in the United States and Canada. *Id.* ¶ 10. Both Plaintiffs are

Mexican corporations with their principal place of business in Mexico. *Id.* ¶¶ 5-6. The entity

Marcas Modelo has licensed a wide array of items. Corona Beer trademarks appear, for

example, on sweatshirts, T-shirts, golf and tennis shirts, jackets, hats, caps, sun visors, socks,

shorts, bags and flip-flops. *Id.* ¶ 16. Marcas Modelo is the sole and exclusive licensor of Corona

Beer trademarks in the United States and Canada. *Id.* ¶ 18. Before a license is approved, the

licensee must submit the design to Marcas Modelo. If there is agreement on the design, the

licensee submits a sample of the product to Marcas Modelo for quality inspection before it may be brought to market. *Id.* ¶ 19.

Defendant Concept One, a New York limited liability company with its principal place of business in New York, distributes and sells licensed clothing and accessory products and owns the rights to over 100 licenses. *Id.* ¶ 7; Am. Ans. ¶ 7. Marcas Modelo and Concept One entered into a License Agreement, effective January 1, 2007 and extending to December 31, 2007 (the "2007 License Agreement"), whereby Marcas Modelo granted Concept One a limited, revocable, non-exclusive license (as it had in the past) to use Corona Beer trademarks in the manufacture, sale and distribution of certain products in the United States. Compl. Ex. C § 2.1. The 2007 License Agreement was the last of several consecutive license agreements by which Concept One was licensed to use Corona Beer trademarks. Each agreement was renewable on a calendar year basis. Am. Ans. ¶ 94; *see* Compl. Ex. C § 4.4.

Plaintiffs allege that Concept One violated the 2007 License Agreement by causing to be manufactured and imported numerous products bearing Corona Beer trademarks without Marcas Modelo's approval or authorization and by selling products bearing designs that Marcas Modelo never approved. Compl. ¶¶ 30-31; *see* Compl. Ex. C. § 3. On July 26, 2007, Marcas Modelo notified Concept One by letter that it was terminating the 2007 License Agreement due to Concept One's alleged breach, trademark infringement, unfair competition and deceptive business practices. Compl. Ex. G.

## II. PROCEDURAL HISTORY

On September 12, 2007, Plaintiffs brought this action against Concept One for, *inter alia*, trademark infringement, trademark dilution, unfair competition, injury to business reputation and breach of contract. Compl. ¶ 1. On October 22, 2007, Concept One asserted counterclaims for breach of contract, declaratory judgment and tortious interference with business relations, and demanded punitive damages and other relief. Ans. 14-17. On November 13, 2007, Plaintiffs moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Concept One's counterclaim for tortious interference with business relations and to strike its demand for punitive damages. On December 10, 2007, Concept One filed an amended pleading that eliminated the counterclaim for tortious interference with business relations and replaced it with a counterclaim for tortious interference with contract. On December 18, 2007, Plaintiffs moved to dismiss Concept One's new counterclaim for tortious interference with contract; that motion was fully submitted to this Court on February 25, 2008. I must now decide whether to dismiss Concept One's counterclaim for

tortious interference with contract and whether to strike Concept One's request for punitive damages.

### III. STANDARD OF REVIEW

A motion to dismiss is properly granted when a complaint or counterclaim provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007) ("*Twombly*"). In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. The factual allegations within the claim "must be enough to raise a right to relief above the speculative level." *Id.* "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the [pleading]." *Id.* at 1969. When deciding a motion to dismiss, a court must accept all the well-pleaded allegations of the claim as true, even if doubtful in fact, and must draw all reasonable inferences in the claimant's favor. *Id.* at 1965; *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008). "While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [the counterclaimant's] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly,* 127 S. Ct. at 1974).[1]

### IV. DISCUSSION

**A.    Motion to Dismiss Counterclaim for Tortious Interference with Contract**

To state a valid claim for tortious interference with contract under New York law, Concept One must allege: (1) the existence of a valid contract between Concept One and a third party; (2) Plaintiffs' knowledge of that contract; (3) Plaintiffs' intentional procurement of a breach of that contract without justification; (4) actual breach of the contract and 5) resulting damages. *See Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006) (citing *Lama Holding Co. v. Smith Barney, Inc.*, 88 N.Y.2d 413, 424 (N.Y. 1996)). Plaintiffs argue that Concept One's counterclaim failed to meet two of these requirements because it did not allege (1) that any retailer breached a contract with Concept One or (2) that Plaintiffs' alleged interference was improper and without justification.

---

[1] The Second Circuit has observed that *Twombly*'s dismissal standard is not limited to antitrust cases. *See Elevator Antitrust Litig.*, 502 F.3d at 50; *Iqbal v. Hasty,* 490 F.3d 143, 157 (2d Cir. 2007); *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 n. 2 (2d Cir. 2007).

### 1.    Failure to Allege a Breach of Contract

To state a claim for tortious interference with contract the claimant must specifically allege that a third party breached its contract.  *See Kirch*, 449 F.3d at 402 (claim dismissed because claimant only alleged that third party "walked away" from contract); *Orange County Choppers, Inc. v. Olaes Enters., Inc.*, 497 F. Supp. 2d 541, 562 (S.D.N.Y. 2007) (claim dismissed because allegations left open possibility that third party lawfully terminated contract or that contract was terminable at will); *Leadsinger, Inc. v. Cole*, No. 05 Civ. 5606, 2006 WL 2320544, *12 (S.D.N.Y. Aug. 10, 2006) (claim dismissed because plaintiff failed to allege relevant terms of contracts with third parties and how third parties breached those terms).

In its counterclaim, Concept One never explicitly alleges that a third-party retailer "breached" a contract with it, but asserts only that as a result of Plaintiffs' interference retailers Wal-Mart Stores, Spencer's "and others . . . *canceled*" their contracts, orders and commitments and did not enter into new ones with Defendant for Corona-branded products.  Am. Ans. ¶ 114 (emphasis added).  Nevertheless, Defendant argues that by "canceled" it meant "breached" and in its February 25, 2008 correspondence to this Court requested leave to amend its counterclaim. During the parties' oral argument Defendant's counsel stated: "I am here to represent to your Honor—I spoke to my client—I'm ready to allege these contracts were breached.  That's what I meant to say."  Tr. 22:22-25, 23:1.

In *Orange County Choppers*, the court permitted the plaintiff, under similar circumstances, leave to amend its tortious interference with contract claim.  497 F. Supp. 2d at 562.  Finding that "[a]t present, [the plaintiff's] allegations are deficient as a matter of law because they leave open the possibility that [the third party] lawfully terminated the contract or that the contract was terminable at will," and that "this failure of pleading may only be an oversight by counsel," the court dismissed the claim with leave to amend to include the allegation that the third party breached the contract as a result of the defendant's interference.  *Id.* Likewise, here, Defendant's counterclaim for tortious interference with contract cannot proceed as drafted and is dismissed with leave to amend the counterclaim to include the allegation that third-party retailers, including Wal-Mart Stores and Spencer's, or any third party, explicitly "breached" their contracts with Defendant as a result of Plaintiffs' alleged interference.

### 2.    Failure to Allege Improper Interference without Justification

Plaintiffs further argue that Defendant's counterclaim fails to allege that Plaintiffs improperly procured the breach of Defendant's contracts with third-party retailers without

justification. The "improperly" and "without justification" elements of tortious interference with contract are indistinguishable in the case law, and courts in this Circuit appear to use the terms interchangeably. *See, e.g., Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 406 N.E.2d 445, 448 (N.Y. 1980) (observing that the "keystone" of tortious interference with contract as set forth in *Restatement (Second) of the Law of Torts* (1977), § 766, is "the adverb 'improperly[,]' a term selected in preference to the phrase 'without justification' appearing frequently in judicial decisions"); *Mina Inv. Holdings Ltd. v. Lefkowitz*, 184 F.R.D. 245, 251 (S.D.N.Y. 1999) ("[T]he *Restatement* factors are utilized to determine whether the interference is 'improper'—or as several courts before referred to it, 'without justification' . . . ."); *Kirch*, 449 F.3d at 401 (listing "without justification" as an element of tortious interference with contract but not "improperly"); *Lama Holding*, 88 N.Y.2d at 424 (same).

The Second Circuit in both *International Minerals & Resources, S.A. v. Pappas*, 96 F.3d 586, 595 (2d Cir. 1996) and *Jews for Jesus, Inc. v. Jewish Community Relations Council*, 968 F.2d 286, 292 (2d Cir. 1992), noted that to determine whether the interference was "without justification" or "improper," the New York Court of Appeals has balanced the factors set forth in *Restatement (Second) of the Law of Torts* (1979), § 767, which include the nature of the conduct of the person who interferes, the interest of the party being interfered with, the relationship between the parties, the motive and interests sought to be advanced by the one who interferes, the social interests in protecting the freedom of action of that person, the contractual interests of the party interfered with and the proximity or remoteness to the interference of the conduct complained of. *See also Guard-Life*, 406 N.E.2d at 448.

It must be emphasized that to state a claim for tortious interference with contract under New York law, Defendant need not allege malice on the part of Plaintiffs or that Plaintiffs used wrongful means to procure the breach. *See Kirch*, 449 F.3d at 401. Defendant need only allege facts that show that Plaintiffs' procurement of the breach was without justification. This is the signal difference between a claim for tortious interference with business relations, which requires that the tortfeasor acted "solely out of malice" or used "wrongful means," and a claim for tortious interference with contract, which requires only "improper" conduct. *See, e.g., Christopher A. Vinas, CPA v. Chubb Corp.*, 499 F. Supp. 2d 427, 434 (S.D.N.Y. 2007).

In its Amended Answer and Counterclaims, Defendant alleges that Plaintiffs obtained the identity of Defendant's accounts and were aware of Defendant's contracts, orders, commitments and other business relations, including but not limited to Spencer's' orders on or about July 18,

2007 for Corona-brand hats and "combos" and Wal-Mart Stores' orders on or about March 20, 2007, May 31, 2007 and June 11, 2007 for Corona-brand hats, "combos" and flip-flops. Am. Ans. ¶ 107. Defendant further alleges that on or about July 30, 2007, and "on other occasions to be learned in discovery," Plaintiffs

> intentionally, knowingly and by wrongful means interfered with defendant's contracts, orders, commitments and other business relations by, *inter alia*, surreptitiously circulating communication addressed to third-party licensees of plaintiffs and upon information and belief others, but also directed at Wal-Mart Stores and Spencer's and defendant's other accounts, which, *inter alia*, *falsely represented that defendant was in breach of its License Agreement . . . [and Plaintiffs] falsely implied that defendant's License Agreement had been properly terminated.*

*Id.* ¶¶ 108-09 (emphasis added).

The "improper" and "without justification" element of Defendant's counterclaim reaches the kernel of this case: each party claims that the other party breached the 2007 License Agreement. Concept One alleges that, under its license agreements for Corona Beer trademarks prior to 2007, "virtually none" of the more than 1,000 products that it submitted for approval were rejected. *Id.* ¶ 95. Concept One claims, however, that in 2007 Plaintiffs "improperly, without basis, in bad faith and in violation of the [2007] License Agreement" rejected all but approximately six of Concept One's product designs, even though they allegedly met the contractual standards, and that Plaintiffs' termination of the License Agreement was thus improper. *Id.* ¶¶ 98, 100. Plaintiffs' messages to Defendant's retailers and to other licensees[2] that Defendant—and not Plaintiffs—breached the agreement were, Defendant alleges, therefore "without any justification." *Id.* ¶¶ 108, 113. Indeed, with its papers in opposition to Plaintiffs' motion to dismiss, Defendant included a letter dated July 30, 2007 from a certain "Juan Fernandez" of Marcas Modelo to licensees, indicating that Defendant breached the 2007 License Agreement, and an email dated August 3, 2007 from Juan Fernandez to a certain "Jose Pares Gutierrez" of "Grupo Modelo," suggesting that Marcas Modelo expected that message to "filter" from the licensees to Wal-Mart, one of Defendant's largest customers. *See* Letter and Email attached to Def.'s Reply (Feb. 25, 2008); Am. Ans. ¶ 108 (referring to communications from Plaintiffs to licensees on or about July 30, 2007).

The Court of Appeals of New York in *Guard-Life* noted that it has "upheld complaints

---

[2] Defendant claims that Plaintiffs expected the other licensees to relay their messages to Defendant's retailers.

and recoveries in actions seeking damages for interference when the alleged means employed by the one interfering . . . consist[ed] of fraudulent representations . . . ." 406 N.E.2d at 451. Here, Defendant alleges that Plaintiffs' letters to retailers and other licensees included a fraudulent misrepresentation, that Defendant breached the 2007 License Agreement.

Plaintiffs, however, argue that their letters were proper and justified because they had the right to protect their trademarks. Plaintiffs point to Judge Sweet's decision in *P. Kaufmann, Inc. v. Americraft Fabrics, Inc.*, 232 F. Supp. 2d 220 (S.D.N.Y. 2002), in which the plaintiff, a fabric designer, sued its competitor for copyright infringement and related claims. *Id.* at 220. The defendant filed a counterclaim for tortious interference with contract and alleged that the plaintiff acted improperly when it sent a letter to the defendant's customers stating that the defendant had copied the plaintiff's design. *Id.* at 223. The plaintiff argued, as Plaintiffs here, that its action was proper because it had an economic justification, namely, to protect its copyright. *Id.* at 225. Judge Sweet agreed and held that "[s]eeking to protect a copyright by alerting a third party that the copyright is being infringed constitutes a justification defense to this claim." *Id.* Accordingly, the court dismissed the counterclaim for tortious interference with contract. *Id.*

While the facts in *Kaufmann* and in the case at bar are similar, a crucial difference is that the parties in *Kaufmann* had no contractual relationship. Here, in contrast, the parties' contractual relationship spanned years, and each party claims that the other party breached the contract.

Further, accepting Defendant's well-pleaded allegations as true and construing the allegations in the light most favorable to Defendant, as I must, I am unwilling at this stage of the litigation to dismiss Defendant's counterclaim. In any event, as a rule, whether the actions of one party or the other were improper or justified ought not be decided at this juncture. On that score, I am concerned that while Plaintiffs had the right to protect their trademarks, a jury could plausibly find that Plaintiffs' communications to retailers and other licensees to the effect that Defendant breached the 2007 License Agreement were improper and without justification. *See Mina Inv. Holdings*, 184 F.R.D. at 251 (noting that the issue of when interference with contracts will be deemed "improper" is a "factually sensitive issue").

**B.    Motion to Strike Defendant's Request for Punitive Damages**

In New York, "[p]unitive damages are not recoverable for an ordinary breach of contract as their purpose is not to remedy private wrongs but to vindicate public rights." *Rocanova v. Equitable Life Assurance Soc'y of the United States*, 83 N.Y.2d 603, 613 (N.Y. 1994). However,

where the claim for which punitive damages are sought arises from a breach of contract, punitive damages may be recoverable, but only if (1) the conduct is actionable as an independent tort; (2) the tortious conduct was of the egregious nature set forth in *Walker v. Sheldon*, 10 N.Y.2d 401, 404-05 (N.Y. 1961); (3) the egregious conduct was directed to the claimant; and (4) the conduct was part of a pattern directed at the public generally.  *New York Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 316 (N.Y. 1995); *AD Rendon Commc'ns, Inc. v. Lumina Ams., Inc.*, No. 04 Civ. 8832, 2007 WL 2962591, *8 (S.D.N.Y. Oct. 10, 2007); *Rocanova*, 83 N.Y.2d at 613.

   In *Walker*, the Court of Appeals of New York held that punitive damages are justifiable where a party was "engaged in carrying on a virtually larcenous scheme to trap generally the unwary," and where "the wrong complained of is morally culpable, or is actuated by evil and reprehensible motives."  10 N.Y.2d at 404 (quotation marks and internal citation omitted). Although punitive damages have been refused in the "ordinary" fraud and deceit case, the *Walker* court held that "where the fraud, aimed at the public generally, is gross and involves high moral culpability," punitive damages may be recoverable.  *Id.* at 405.  Thus in *Serota v. Mayfair Super Markets, Inc.*, 790 N.Y.S.2d 173, 174 (N.Y. App. Div. 2005), cited by Defendant, the court sustained a punitive damages award where the tortious act "involved a wanton or reckless disregard of [the other party's] rights under its lease."

   Plaintiffs' alleged actions, however, do not give rise to the "high moral culpability" described by New York and federal courts in this Circuit.  *See, e.g.*, *Maxan Curtain Mfg. Corp. v. Chem. Bank*, 646 N.Y.S.2d 701, 702 (N.Y. App. Div. 1996) (permitting claim for punitive damages for tortious interference with contract where plaintiff alleged that defendant's vice-president "maliciously ordered a bank employee to dishonor the plaintiff's checks despite the fact that the plaintiff had sufficient funds in its checking account"; this "evince[d] a degree of moral culpability for which a fact-finder may consider the assessment of punitive damages"); *Int'l Minerals & Res., S.A. v. Am. Gen. Res., Inc.*, No. 87 Civ. 3988, 2000 WL 97613, *2 (S.D.N.Y. Jan. 27, 2000) (finding that, "[w]hile a close call, . . . a reasonable jury could have found that the defendants . . . acted with the requisite state of mind" to justify punitive damages for tortious interference with contract, where defendants back-dated documents and attempted to "pay off" a witness).

   Defendant has not sufficiently alleged that Plaintiffs engaged in such malicious conduct when they sent letters to retailers and other licensees stating that Defendant had breached the 2007 License Agreement.  While a jury could find that the letters constituted "improper"

conduct, they were not "actuated by evil and reprehensible motives," but rather by Plaintiffs' desire to protect their trademarks.  *See Walker*, 10 N.Y.2d at 404.  Therefore, Defendant's allegations that Plaintiffs engaged in improper and unjustified conduct are not sufficient to support a claim for punitive damages.

Defendant argues that under New York law it need not allege that Plaintiffs' conduct was directed to the public.  The case law, however, shows otherwise.  Under New York law, "where there is a close nexus between the . . . tortious conduct and the contract from which it is said to arise, for example, where the contract was fraudulently induced or where a party engages in conduct outside the contract but intended to defeat the contract," punitive damages are recoverable only where the culpable party's conduct was directed at the public.  *MacQuesten Gen. Contracting, Inc. v. HCE, Inc.*, 296 F. Supp. 2d 437, 446-47 (S.D.N.Y. 2003) (internal quotation marks and citation omitted).

It is undisputed that there was a close nexus between the 2007 Licensing Agreement and the alleged tortious conduct.  Therefore, Defendant must demonstrate that Plaintiffs' alleged tortious interference with contract was part of a practice directed at the public generally.  Because Defendant has failed to do so its claim for punitive damages must be dismissed on this ground, as well.  *See, e.g.*, *Rivas v. AmeriMed USA, Inc.*, 824 N.Y.S.2d 41, 43 (N.Y. App. Div. 2006) (dismissing punitive damages claim because plaintiffs failed to demonstrate that egregious tortious conduct was "part of a pattern of similar conduct directed at the public generally"); *Walker*, 10 N.Y.2d at 405  (punitive damages recoverable provided the conduct was "aimed at the public generally"); *Rocanova*, 83 N.Y.2d at 613 ("A private party seeking to recover punitive damages must not only demonstrate egregious tortious conduct by which he or she was aggrieved, but also that such conduct was part of a pattern of similar conduct directed at the public generally.").[3]

---

[3] To support its argument that it need not allege conduct directed at the public, Defendant cites several cases that have been shown to state an incorrect standard for punitive damages.  For example, Defendant relies on *Brown v. AXA RE*, No. 02 Civ. 10138, 2004 WL 941959 (S.D.N.Y. May 3, 2004), in which the court opined that punitive damages are recoverable, "even if there is no harm aimed at the general public, 'so long as the very high threshold of moral culpability is satisfied.'"  *Id.*, at *9 (quoting *Blank v. Baronowski*, 959 F. Supp. 172, 179 (S.D.N.Y. 1997) and *Giblin v. Murphy*, 73 N.Y.2d 769, 772 (N.Y. 1988)).  However, as courts in this Circuit have observed, both *Brown* and the cases quoted by it, *Blank* and *Giblin*, misstated the law because they either were decided after *Rocanova* or relied on pre-*Rocanova* case law.  *See, e.g.*, *Conocophillips v. 261 E. Merrick Rd. Corp.*, 428 F. Supp. 2d 111, 129 (E.D.N.Y. 2006); *Baxter Diagnostics, Inc. v. Novatek Med., Inc.*, No. 94 Civ. 5220, 1998 WL 665138, *2 (S.D.N.Y. Sept. 25, 1998); *Day Spring Enters., Inc. v. LMC Int'l, Inc.*, No. 98 Civ. 658, 2004 WL 2191568, *32 (W.D.N.Y. Sep 24, 2004).

Because Defendant has failed to allege that Plaintiffs' conduct was egregious and directed at the public generally, its claim for punitive damages cannot proceed.

## V. CONCLUSION

For the foregoing reasons, Defendant's counterclaim for tortious interference with contract is hereby dismissed with leave to replead to include allegations that third-party retailers explicitly "breached" their contracts with Defendant. Plaintiffs' motion to strike Defendant's claim for punitive damages is hereby GRANTED. The parties are reminded that, pursuant to the pretrial scheduling order, any dispositive motions must be fully briefed and filed on or before June 15, 2008, and the parties have chosen August 2008 as the month of trial.

**IT IS SO ORDERED.**
**New York, New York**
**April ⎡U⎤ , 2008**

_____
U.S.D.J.

10