```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------x

CERVECERIA MODELO, S.A. DE C.V.      :   07 CV 7998 (HB)
and MARCUS MODELO S.A. DE C.V.,
                                     :
              Plaintiffs,
                                     :
     -against-
                                     :
USPA ACCESSORIES LLC d/b/a
CONCEPT ONE ACCESSORIES,             :

              Defendant.             :
-----------------------------------x
```

DEFENDANT'S MEMORANDUM OF LAW
<u>IN OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE</u>

IRA DANIEL TOKAYER, ESQ. (IT-4734)
Attorney for Defendant
42 West 38th Street, Suite 802
New York, New York 10018
(212) 695-5250

Defendant, USPA Accessories LLC d/b/a Concept One Accessories ("Concept One"), by its attorney, Ira Daniel Tokayer, Esq., submits this Memorandum of Law in opposition to the Motion in Limine of plaintiffs Cerveceria Modelo, S.A. de C.V. and Marcus Modelo S.A. de C.V. ("Modelo").

## Preliminary Statement

Plaintiffs seek to bar the introduction of relevant and admissible evidence of Modelo's knowledge of, and consent to Concept One's use of the Corona mark on bags, among other products, distributed by Concept One. Denominated as a motion in limine, the motion runs afoul of the rule that motions in limine may only be used to exclude evidence that is *clearly inadmissible on all potential grounds*. This is not the case here, as the evidence plaintiffs seek to bar *is admissible on multiple grounds under numerous legal theories*. Accordingly, plaintiffs' motion is devoid of legal merit and should be denied in its entirety.

Throughout this litigation, it has been and remains Concept One's position that plaintiffs' claims for, inter alia, trademark infringement and unfair competition are barred, in whole or in part, by estoppel; plaintiffs' consent to Concept One's use of the Corona mark; waiver; acquiescence; laches; unreasonable delay; unclean hands; and that plaintiffs' claim for Concept One's profits (plaintiffs having failed to identify any actual damages) is precluded by a lack of wilful deception, among other defenses set forth in plaintiffs' answer. (Ex. J.)

Modelo's knowledge of and consent to Concept One's use of the Corona-mark on Concept One's products including bags is directly relevant to support these legal theories.

Plaintiffs contend that Concept One may not introduce such evidence on the ground of the parol evidence rule. However, plaintiffs fail to cite any case in which the parol evidence rule - a rule of contract interpretation - was applied to bar evidence pertaining to the myriad defenses enumerated above. Moreover, where applicable, the rule operates only to exclude prior or contemporaneous negotiations, understandings and agreements which vary the terms of an integrated agreement. At trial, Concept One will establish that Modelo's authorization for Concept One to use its mark on bags was the subject of a separate agreement which is not inconsistent with the license agreement. The agreement is substantiated in writing and by the parties' conduct consistent with that agreement.

In addition, a well-recognized exception to the parol evidence rule - which exception is applicable here - is "mutual mistake." That exception permits extrinsic evidence to establish that the parties had an agreement with respect to bags and subsequently found themselves signatories to an agreement which failed to accurately reflect the agreement that the parties had reached. Alternatively, it is well-settled that the parol evidence rule does not bar evidence of subsequent amendments or

modifications to an earlier agreement.  Here, the parties' correspondence, plaintiffs' internal documents and the parties' course of conduct establish that the license agreement - assuming arguendo that it did not include bags as a product category in the first place - was subsequently modified to include bags and the evidence plaintiffs seek barred is admissible on this ground alone.

## Facts

### This Action

This action, commenced on or about September 12, 2007, arises out of plaintiffs' failure to approve Concept One's submissions of designs bearing the Corona mark.  Plaintiffs' failure to approve designs - or even review them - prevented Concept One from producing, distributing and selling Corona-brand products to its retail customers and from realizing its bargained-for rights.

### The Grant of a License to Concept One

Concept One entered into a license agreement with Modelo in March 2004.  By that agreement, inter alia, Concept One was granted the right to distribute and sell headwear and bags bearing the Corona mark.  (Ex. A.)

In October 2006, Juan Fernandez, the head of Modelo's U.S. licensing program, advised Concept One that it was selected to be one of a handful of licensees to continue with Modelo in

3

2007. (Ex. B.) On November 1, 2006, Concept One noticed that bags had "dropped out" of the agreement. Jean Marie Ruffini, a signator to the licensing agreement, conferred with Fernandez (Ex. F, Ruffini Dep. at 109-10) and advised Concept One in writing of Modelo's agreement to allow Concept One to affix the Corona mark on bags as well. (Exhibit 2 attached to Plaintiffs' Moving Papers.)

While the agreement was effective as of January 1, 2007, it is not at all clear from the evidence when it was actually signed. Significantly, no attorneys were involved in the negotiation of the license agreement which was drafted by Modelo. Nor was it reviewed by counsel before it was executed. (Ex. C, Gerber Dep., at 17.) Interestingly, neither of plaintiffs' signatories to the agreement are employees of the corporate party to the agreement, calling into question whether the agreement is binding against Concept One and the very validity of the merger clause therein. (Ex. C, Pares Dep., at 89-90.)

Evidence that Modelo Authorized Bags

Testimony, emails and internal Modelo documents demonstrate that both Modelo and Concept One understood that Concept One was authorized to use the Corona mark on bags, among other products. This evidence includes:

4

- An email from Jean Marie Ruffini to Concept One, dated November 1, 2006, agreeing to add bags to the Corona-brand products that Concept One was authorized to sell;
- An internal Modelo document entitled "licensee database 2007.xls" provided by Jean Marie Ruffini to Concept One on January 11, 2007, identifying bags as an authorized category for Concept One;
- An internal Modelo document entitled "licensee database 2007.xls" prepared by Jean Marie Ruffini and provided to Concept One on January 22, 2007, at 12:30 p.m., identifying bags as an authorized category for Concept One;
- An internal Modelo document entitled "licensee database 2007.xls" revised by Jean Marie Ruffini on January 22, 2007, and provided to Concept One at 3:25 p.m. on that date, identifying bags as an authorized category for Concept One; and
- An internal Modelo document entitled "licensee database" prepared by Fernandez on January 31, 2007, and emailed to Concept One after a meeting between Fernandez and Sam Hafif, President of Concept One, on February 5, 2007, identifying bags as an authorized category for Concept One;

among other things, including conversation between Fernandez and Hafif at the above-referenced meeting on February 5, 2007, in which they reviewed, <u>inter alia</u>, Concept One's line of bags.

5

(See Exs. D, E and Hafif Deposition attached within Ex. F.) Indeed, Modelo provided the internal documents identified above to Concept One *and its other licensees* specifically for the purpose of advising retailers and other licensees that bags were products to which Concept One was authorized to affix the Corona mark. (See Hafif Deposition attached within Ex. F.)

The Parties' Performance

In reliance upon these representations, Concept One undertook substantial and costly steps to design Corona-brand bags, submit bags for Modelo's approval, market bags to its retail customers, represent that Concept One was authorized to sell Corona-brand bags, take orders for Corona-brand bags, produce Corona-brand bags, ship Corona-brand bags to retailers, report sales of Corona-brand bags to Modelo and pay royalties on such sales which Modelo accepted (Ex. G).

In fact, Ruffini and Fernandez approved a good number of styles of bags submitted by Concept One for Modelo's approval subject to a final sign-off from Modelo representatives in Mexico. (Ex. H.) One bag style was actually approved by Ruffini, Fernandez and Jorge Perez, Modelo's manager of international marketing, and the only reason that style was not finally approved for sale and distribution was that Jose Pares, Modelo's vice-president of international markets, *failed to review any of Concept One's designs after March 2007* - in

6

violation of Modelo's obligations under the license agreement and Modelo's Policies and Procedures Manual. (Ex. I.)

ARGUMENT

THE EVIDENCE PLAINTIFFS SEEK TO BAR
IS ADMISSIBLE ON A MYRIAD OF POTENTIAL GROUNDS

"The purpose of a motion in limine is to allow the court to rule on the relevance and admissibility of certain evidence before it is offered at trial." Loussier v. Universal Music Group, Inc., 2007 WL 1098687, *1 (S.D.N.Y. April 11, 2007). "The court should exclude evidence on a motion in limine only when the evidence is *clearly inadmissible on all potential grounds* and the court may reserve judgment until trial so that the motion is placed in an appropriate factual context." Id. (italics added). Plaintiffs' motion fails to meet this exacting standard in that the evidence plaintiffs seek to exclude is admissible on multiple grounds in support of numerous legal theories. Under these circumstances, the court would be well served to reserve ruling until trial so that an appropriate factual context can be developed.

The evidence that plaintiffs seek to bar - Modelo's knowledge of, and consent to Concept One's use of the Corona mark on bags - is admissible because it goes to the issues of consent, estoppel, waiver, acquiescence, unclean hands and/or lack of wilfullness, among others defenses. These defenses are not affected by the parol evidence rule and evidence in support of

7

such defenses cannot be barred by that rule as a matter of law. Simply put, even if the parol evidence rule rendered certain evidence inadmissible for purposes of one of the claims in the case (i.e., the contract claim), it would not render such evidence inadmissible with respect to all other claims and defenses in the action to which such evidence is material and necessary. See, e.g., 57 N.Y.Jur 2d Estoppel, Ratification and Waiver § 72 ("estoppel may be established by extrinsic evidence despite the existence of a written contract"). See also PRL USA Holdings, Inc. v. U.S. Polo Ass'n, Inc., 520 F.3d 109, 114 (2d Cir. 2008) (affirming the trial court's admission of otherwise inadmissible evidence for purposes of establishing an estoppel defense to a trademark claim).

In addition, the parol evidence rule only operates to bar extrinsic evidence with respect to the interpretation of an "integrated" agreement. "Even where there is a complete integration, the rule will not rise up to bar the admission of evidence in support of a prior oral agreement if the terms of the prior agreement are not inconsistent with the terms of the written integration. This latter statement is true despite the fact that both agreements touch on the same or similar subject matter." Lee v. Joseph E. Seagram & Sons, Inc., 413 F. Supp. 693 (S.D.N.Y. 1976), aff'd, 552 F.2d 447 (2d Cir. 1977).

At trial, Concept One will seek to establish that Modelo's agreement to authorize bags - an agreement memorialized by Ruffini in writing after consultation with Fernandez and to which Pares had no objection (Pares Dep. within Ex. F, at 94-96) - was the subject of a separate agreement: (i) which may have been before <u>or after</u> the signing the license agreement whose very validity may be in question, (ii) which, in granting authorization for bags, is not "inconsistent" with the grant of authorization for <u>other</u> products, and (iii) which is evidenced by writings and the parties' subsequent conduct, such as Concept One designing, marketing, submitting, selling and paying royalties on bags sales and plaintiffs' reviewing, approving and acceptance of royalties on bags sales in accordance with that separate agreement.

In the alternative, Ruffini's agreement to add bags and the other evidence of Modelo's acknowledgment of this agreement is admissible on other grounds. Specifically, it is well-settled in New York that "a contract can be reformed on the basis of mutual mistake if the writing does not accurately reflect the mutual intention of the parties and parol evidence is admissible to establish the existence of the mutual mistake." <u>Investors Ins. Co. of America v. Dorinco Reinsurance Co.</u>, 917 F.2d 100, 105 (2d Cir. 1990). Here, it is evident that the parties had an agreement on bags and subsequently found themselves signatories

9

to a license agreement - unreviewed by counsel - which failed to accurately reflect the agreement that the parties had reached.[1]

Finally, even if the parol evidence rule applies to bar the evidence on the grounds above - which it does not - it is a matter of hornbook law that an agreement can be subsequently amended or modified by mutual assent. 22A N.Y.Jur 2d Contracts, § 473. "Even if a contract expressly provides for modifications to be in writing, an oral modification will be enforced where it has been fully performed." J & R Landscaping, Inc. v. Damianos, 1 A.D.3d 563, 769 N.Y.S.2d 52, 53 (2d Dept. 2003). See also Valjean Mfg. Inc. v. Michael Werdiger, Inc., 2004 WL 876056, *1

---

[1] See Pacwest, Ltd. v. R.T.C., 1996 WL 325647 (S.D.N.Y. June 11, 1996) ("when parties have a real and existing agreement on particular terms and then subsequently find themselves signatories to a writing which does not accurately reflect the agreement reached, the error may be corrected by reforming the contract so that it will accurately reflect the intentions of the parties"), aff'd, 108 F.3d 1370 (2nd Cir. 1997); In re McLean Industries, Inc., 132 B.R. 271 (Bank. Ct. S.D.N.Y. 1991) ("the Second Circuit has acknowledged that where the intentions of parties are clear, the court will not elevate form over substance and allow a windfall to a party"); Nash v. Kornblum, 12 N.Y.2d 42, 234 N.Y.S.2d 697 (1962) ("where there is no mistake about the agreement, and the only mistake alleged is in the reduction of that agreement to writing, such mistake of the scrivener, or of either party, no matter how it occurred, may be corrected"); K.I.D.E. Associates, Ltd. v. Garage Estates Co., 280 A.D.2d 251, 253, 720 N.Y.S.2d 114 (1st Dept. 2001) ("reformation may be an appropriate remedy, despite a merger clause, in the case of mutual mistake or fraud. . . [m]utual mistake occurs when a signed writing does not accurately express the agreement of the parties"); Lent v. Cea, 209 A.D.2d 820, 619 N.Y.S.2d 166 (3d Dept. 1994) (plaintiff has sustained her burden by showing that an agreement was reached since "all conduct and correspondence thereafter was consistent with that agreement").

n.2 (S.D.N.Y. Apr. 22, 2004); T & N West Galla Pizzeria, Inc. v. CF White Plains Associates, 185 A.D.2d 270, 272, 586 N.Y.S.2d 266 (2d Dept. 1992); General Elec. Capital Commercial Automotive Finance, Inc. v. Spartan Motors, Ltd., 246 A.D.2d 41, 52, 675 N.Y.S.2d 626 (2d Dept. 1998).

Thus, it is axiomatic that the parol evidence rule does not serve to freeze agreements in amber. Communications and activities - both prior and subsequent to the agreement such as the ones plaintiffs seek to bar - are always germane to this issue and the parol evidence rule is not a bar. See Levin v. Leon G. Silver & Associates, Ltd., 7 Misc. 3d 1016(A), 801 N.Y.S.2d 235 (Table), 2005 WL 975693 (Sup. Ct. Nassau Co. April 22, 2005) (the parol evidence rule is not applicable to oral modifications and "past oral discussions may be relied upon to test the alleged modification").

Here, plaintiffs' internal documents, its conversations and correspondence with Concept One and the parties' performance and course of conduct establish that, if there was no agreement to include bags as an authorized product category in the first instance, certainly the license agreement was subsequently modified to include bags. See Kingsrow Enterprises, Inc. v. Metromedia, Inc., 1978 WL 952, *2 n.3 (S.D.N.Y. Aug. 9, 1978) ("defendant does not and could not contend that the parol evidence rule bars evidence of later transactions or agreements;

thus, even if the [contract] could be deemed an 'integrated' document, evidence of subsequent modification of its terms would remain admissible to controvert its terms); <u>Neonex Intern. Ltd. v. Norris Grain Company</u>, 338 F. Supp. 845, 853 (S.D.N.Y. 1972) (evidence as to whether there had been a subsequent oral modification of contract admissible); <u>Donald v. Barbato</u>, 27 A.D.3d 414, 810 N.Y.S.2d 665 (2d Dept. 2006) (affidavits and correspondence raised issue as to oral modification of agreement, estoppel and waiver).[2]

<u>Conclusion</u>

WHEREFORE, based on the foregoing, defendant respectfully requests that plaintiffs' motion seeking the exclusion of certain evidence from introduction at trial be denied in its entirety.

Dated:  New York, New York
        August 11, 2008

_____/s/_____
IRA DANIEL TOKAYER, ESQ.
Attorney for Defendant
42 West 38th Street, Suite 802
New York, New York 10018
(212) 695-5250

MOT in limine 02 MOL OPP 02.wpd

---

[2] In addition to the parties' performance which avoids the statute of frauds, plaintiffs' would be estopped from invoking that statute where "a written agreement has induced another's significant and substantial reliance upon an oral modification and if the conduct relied upon is not otherwise compatible with the agreement as written," as here. <u>EMI Music Marketing v. Avatar Records, Inc.</u>, 317 F. Supp. 2d 412, 421 (S.D.N.Y. 2004).