business or affairs of LICENSEE except as designated by LICENSOR pursuant to Section 6.4 of this Agreement. LICENSEE shall not use any of the SUBJECT MARKS in the business or affairs of LICENSEE except as expressly authorized in this Agreement and approved in advance in writing by LICENSOR as to the form and manner of use pursuant to Section 3 of this Agreement.

6.2  LICENSEE shall not alter, modify, dilute or otherwise misuse the SUBJECT MARKS or bring them into disrepute, and LICENSEE shall not add any words, denominations, or other graphic elements or symbols to the SUBJECT MARKS unless approved in advance in writing by LICENSOR pursuant to Section 3 of this Agreement.

6.3  LICENSEE shall not use any trademark, service mark, trade name, logo, symbol or device other than the SUBJECT MARKS in connection with any of the LICENSED PRODUCTS without the prior written consent of LICENSOR; provided however, that LICENSEE shall affix a tag, label, imprint, or other devise to each LICENSED PRODUCT in such form, manner, location and size as approved in advance in writing by LICENSOR identifying LICENSEE as the manufacturer and distributor of such product.

6.4  LICENSEE shall affix a tag, label, imprint or other appropriate device to each LICENSED PRODUCT in such form, manner, location and size as directed by LICENSOR bearing such copyright, trademark, service mark, or other propriety notices as LICENSOR may from time to time designate.

6.5  At the request of LICENSOR, LICENSEE shall remove from any advertisement, marketing material, product or product package bearing on the SUBJECT MARKS any element which LICENSOR, in the exercise of LICENSOR'S sole discretion believe will in any way harm the SUBJECT MARKS or the reputation of LICENSOR.

6.6  LICENSEE recognizes the great value of the goodwill associated with the SUBJECT MARKS, and LICENSEE acknowledges that such goodwill belongs exclusively to LICENSOR and that any and all use of the SUBJECT MARKS by LICENSEE inures solely to the benefit of LICENSOR. LICENSEE acknowledges the validity of the SUBJECT MARKS and of this License Agreement, as well as LICENSOR's exclusive right, title and interest in and to the SUBJECT MARKS as applied to the LICENSED PRODUCTS under all applicable trademark, copyright, intellectual property and unfair competition laws. LICENSEE shall not in any manner represent or claim that LICENSEE has any ownership interest in the SUBJECT MARKS or in any registration thereof, and shall not knowingly in any way do or cause to be done, or assist others in doing or causing to be done, any act or thing contesting or in any way impairing LICENSOR's right, title and interest in and to the SUBJECT MARKS or the validity of this License Agreement. LICENSEE acknowledges that, except for the right licensed by this Agreement, LICENSEE has no interest in any of the SUBJECT MARKS, and further agrees not to register or attempt to register in any territory any of the SUBJECT MARKS for any products or services, and not to use the SUBJECT MARKS for any products or service in any territory except as expressly licensed under this Agreement.

5

7. Indemnification

7.1 LICENSOR assumes no liability to LICENSEE or to third parties with respect to the performance characteristics of the LICENSED PRODUCTS manufactured, sold or otherwise distributed by LICENSEE. LICENSEE agrees to indemnify and hold harmless LICENSOR, its officers, employees and agents from any and all claims, demands, actions, causes of actions, suits, proceedings, damages, liabilities and costs and expenses of every nature, including attorney's fees, relating to or arising out of the manufacture, sale or other distribution of the LICENSED PRODUCTS pursuant to this Agreement or from the use of the LICENSED PRODUCTS so manufactured, sold or distributed.

7.2 LICENSOR makes no representations or warranties concerning the use of the SUBJECT MARKS in connection with the LICENSED PRODUCTS, and LICENSOR assumes no liability with respect to LICENSEE's use of the SUBJECT MARKS.

8. Insurance

8.1 During the term of this Agreement, LICENSEE shall maintain in effect insurance for bodily injury and property damage including product liability, in per occurrence limits of not less than **$1,000,000.00.** Such insurance shall cover claims for damages of any kind arising out of the manufacture, sale, distribution, or use of the LICENSED PRODUCTS, regardless of when such claims are made or when the underlying injuries occur or manifest themselves. Each policy of such insurance shall name LICENSOR as an additional insured, shall provide for waiver of subrogation against LICENSOR and shall provide that notice shall be given to LICENSOR at least thirty days prior to cancellation or material change in the form of such policy. LICENSEE shall deliver certificates evidencing such insurance to LICENSOR within fifteen days after signing this Agreement, and LICENSEE shall not sell or otherwise distribute any LICENSED PRODUCTS until such insurance coverage is in effect.

9. Term and Termination

9.1 Unless sooner terminated as provided in this Section 9, this Agreement shall run through **December 31st, 2004.** 2005. [DH]

9.2 After one year from the effective date of this Agreement set forth below, the Agreement may be terminated at any time by either Party without cause on sixty days, advance written notice to the other Party.

9.3 Should LICENSEE fail to comply with any provision of this Agreement, LICENSOR may terminate this Agreement on thirty days' advance written notice to LICENSEE; provided, that such notice shall be void if LICENSEE corrects such failure to the satisfaction of LICENSOR during the thirty day notice period. LICENSOR's satisfaction shall be reasonable.

6

10. Effects of Termination

    10.1 Termination of this Agreement shall not impair any accrued rights of LICENSOR.

    10.2 Upon termination of this Agreement, all rights granted to LICENSEE under this Agreement shall revert to LICENSOR, and LICENSEE shall make no claim to such rights.

11. LICENSEE'S Duties upon Termination.

    11.1 Upon the termination of this Agreement, LICENSEE shall immediately discontinue (a) the manufacture of any product bearing the SUBJECT MARKS, and (b) any other use of the SUBJECT MARKS; provided, that for a period of three months after such termination LICENSEE shall have the right to dispose of its then existing stock of LICENSED PRODUCTS bearing the SUBJECT MARKS at LICENSEE'S normal NET SALES PRICE. Such disposition shall be subject to the terms of this Agreement including, but not limited to, those requiring the reporting of sales and payment of royalties. At the end of such period, LICENSEE shall be subject to the terms of this Agreement including, but not limited to, those requiring the reporting of sales and payment of royalties. At the end of such period, LICENSEE shall destroy all unsold LICENSED PRODUCTS bearing the SUBJECT MARKS and shall report to LICENSOR the number of each destroyed. Notwithstanding the foregoing provision, LICENSEE's rights to dispose of its stock after termination of this Agreement is subject to the condition that within fifteen days after such termination (a) shall pay to LICENSOR all royalties accrued to the time of termination, (b) shall deliver to LICENSOR a report of sales up to the time of termination in the form required by Section 5.1 of this Agreement, (c) shall provide LICENSOR with a written report of LICENSEE's remaining inventory of each of the unsold LICENSED PRODUCTS bearing SUBJECT MARKS, and (d) shall allow LICENSOR to conduct a physical inventory to verify such report.

12. Remedies

    12.1 LICENSEE acknowledges that its breach of this Agreement will result in immediate and irreparable damage to LICENSOR, for which money damages alone would be inadequate to compensate LICENSOR. Therefore, in the event of a breach or threatened breach of any provision of this Agreement by LICENSEE, LICENSOR may, in addition to all other remedies, immediately obtain and enforce injunctive relief prohibiting such breach or compelling specific performance of such provision.

    12.2 In the event that LICENSOR prevails, in whole or in part, in any action by or against LICENSEE or anyone in privity with LICENSEE arising out of or relating to this Agreement, LICENSOR shall be entitled to recover its costs and its reasonable attorney's fees.



13. Confidentiality

    13.1 All information contained in this Agreement and any and all information acquired by LICENSEE as a result of the relationship created herein is and shall remain confidential. LICENSEE shall not disclose any of the aforementioned information, directly or indirectly, not use it in any way, either during the term of this Agreement or at any time thereafter, except as permitted under the terms of this Agreement.

14. Severability

    14.1 In the event any provision of this Agreement is determined to be unenforceable under or in conflict with the law of any applicable jurisdiction, such provision shall be deemed omitted from this Agreement, but the validity and enforceability of the remaining provisions shall not be affected by such deemed omission.

15. Modification and Waiver

    15.1 This Agreement may be amended only in writing signed by both Parties.

    15.2 No waiver by either Party of the breach of any provision of this Agreement shall be deemed a waiver of any continuing or subsequent breach of that provision or of any other provision.

16. Assignability

    16.1 This Agreement shall inure to the benefit of LICENSOR, its successors and assigns, and may not be assigned or sublicensed by LICENSEE without the prior written consent of LICENSOR. LICENSOR shall have no obligation to grant such consent.

17. GOVERNING LAW

    17.1 This Agreement shall be governed by the laws of the State of Texas, U.S.A. Each party hereby agrees to the jurisdiction and venue of the courts of the State of Texas, for the litigation or resolution of any dispute between the parties pertaining to this Agreement.

18. Notices and Payments

    18.1 Any notice, payment or other communication required by this Agreement, shall be deemed to have been properly given if made in writing in the English language, and actually delivered (whether by mail, Telex, personal delivery or otherwise) to the corresponding address given below, or such other address as may be designated from time to time by notice so given:

8

TO LICENSOR:
Oscar Villalobos
PROCERMEX INC.
8004 West Avenue
San Antonio, Texas 78213-1866

TO LICENSEE:
Bernie Hafif
CONCEPT ONE ACCESSORIES
362 Fifth Avenue 2nd Floor
New York, NY 10018

19.1   This Agreement shall not constitute (a) a partnership or joint venture between LICENSOR and LICENSEE, or (b) a franchise agreement between LICENSOR and LICENSEE.  LICENSEE shall have no right to obligate or bind LICENSOR in any manner whatsoever, and nothing contained in this agreement shall give LICENSEE any right of agency or representation of LICENSOR vis-a-vis third persons.

20. Entire Agreement

20.1   This Agreement contains the entire agreement between the Parties with regard to the subject matter hereof and supersedes all other statements, representations and agreements pertaining to such subject matter.

IN WITNESS WHEREOF, the Parties have signed this Agreement to be effective as of **March 15th, 2004.**

PROCERMEX, INC.

By: _____
Oscar Villalobos-Vice Chairman

CONCEPT ONE ACCESSORIES

By: _____
Bernie Hafif/CFO

9



CORONA EXTRA

CORONA EXTRA AND DESIGN



MODELO AND DESIGN

Modelo

NEGRA MODELO

NEGRA MODELO AND DESIGN



PACIFICO

PACIFICO AND DESIGN

PACIFICO
CLARA

MODELO ESPECIAL

MODELO ESPECIAL AND DESIGN

Modelo
especial

EXHIBIT B
Headwear and Bags
*************************************************************************