UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
                                              :

CERVECERIA MODELO, S.A. DE C.V. and      :
MARCAS MODELO, S.A. DE C.V.,            :
                                              :

                     **Plaintiffs,**       :
                                              :      **07 Civ. 7998 (HB)**

          - against -              :

                                              :      <u>**OPINION & ORDER**</u>

USPA ACCESSORIES LLC d/b/a CONCEPT ONE    :
ACCESSORIES,                           :
                                              :

                     **Defendant.**       :
                                              :
------------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:**

        Plaintiffs Cerveceria Modelo, S.A. de C.V. ("Cerveceria Modelo") and Marcas Modelo, S.A. de C.V. ("Marcas Modelo") move *in limine* for an order precluding Defendant USPA Accessories LLC d/b/a Concept One Accessories ("Concept One") from introducing extrinsic evidence, whether written or oral, that expands, varies or alters the products that Concept One was authorized to sell under the license agreement between Marcas Modelo, the exclusive licensor of the Corona trademarks in the United States, and Concept One, effective January 1, 2007 (the "License Agreement"). For the reasons set forth below, Plaintiff's motion is denied in part and granted in part.

        Further, Plaintiffs move to preclude Defendant's expert on licensing, Beth Schlansky ("Schlansky"), from testifying. For the reasons set forth below, Plaintiff's motion is granted.

## I. BACKGROUND

        Plaintiffs allege that Concept One violated the License Agreement by causing to be manufactured and imported numerous products bearing Corona Beer trademarks without Marcas Modelo's authorization and by selling products bearing designs that Marcas Modelo never approved. Compl. ¶¶ 30-31. Plaintiffs indicate that they will seek to prove at trial that Concept One is liable for, *inter alia*, trademark infringement in violation of the section 32(a) of the Lanham Act, 15 U.S.C. § 1114(1), and breach of the License Agreement.

        Plaintiffs claim that Concept One's use of the Corona trademark on bags, in particular,

was unauthorized.  Section 2.1 of the License Agreement provides that "[n]o License is granted hereunder for the use of the SUBJECT MARKS for any purpose other than upon or in connection with the LICENSED PRODUCTS."  Diakos Decl. Ex. 1 (License Agreement). Section 1.2 provides that "'LICENSED PRODUCTS' means any product or part thereof listed in Exhibit B."  *Id.*  Exhibit B sets forth the goods that Concept One was authorized to sell bearing the Corona trademark in 2007: "Hats, Headware, Beanies, Umbrellas, Flip Flops, T-Shirts."  *Id.* Bags are not included in that list.  The License Agreement is governed by New York law.  *Id.* § 17.1.

Concept One seeks to admit into evidence various communications between the parties and internal documents of Plaintiffs that, according to Concept One, show that Plaintiffs knew of and consented to Concept One's use of the Corona trademark on bags.

## II.  STANDARD OF REVIEW

A district court "should exclude evidence on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds."  *Loussier v. Universal Music Group, Inc.*, No. 02 Civ. 2447, 2007 WL 1098687, at *1 (S.D.N.Y. Apr. 11, 2007) (citation omitted).

## III.  DISCUSSION

A.     **Plaintiffs' Motion to Exclude Extrinsic Evidence**

The extrinsic evidence at issue, which is described below, comprises emails and other communications between the parties relating to the use of the Corona trademark on bags. Plaintiffs argue that such communications that pre-date the License Agreement are barred by the parol evidence rule.  Where the parties have reduced their agreement to an integrated writing, the parol evidence rule excludes evidence of all prior or contemporaneous negotiations, agreements or understandings offered to contradict, vary or modify the terms of their writing.  *See, e.g.*, *Adler & Shaykin v. Wachner*, 721 F. Supp. 472, 477 (S.D.N.Y. 1988).  The License Agreement is fully integrated pursuant to its merger clause in section 20.1, which provides that the License Agreement "contains the entire agreement between the Parties with regard to the subject matter hereof and supersedes all other statements, representations and agreements pertaining to such subject matter."  Diakos Decl. Ex. 1 (License Agreement).

Concept One argues that it seeks to introduce such evidence for other purposes, including in support of its defenses of consent, estoppel, waiver, acquiescence, unclean hands and lack of willfulness.  Concept One is correct that even if the parol evidence rule renders certain evidence inadmissible for purposes of Plaintiffs' breach of contract claim, it would not render such

evidence inadmissible with respect to other claims and defenses, such as estoppel.  *See, e.g.*, 57 N.Y. Jur. 2d *Estoppel, Ratification and Waiver* § 72 ("[E]stoppel may be established by extrinsic evidence despite the existence of a written contract."); *PRL USA Holdings, Inc. v. U.S. Polo Ass'n, Inc.*, 520 F.3d 109, 114 (2d Cir. 2008) (affirming trial court's admission of otherwise inadmissible evidence for purposes of establishing an estoppel defense to a trademark claim).[1]

Further, the parol evidence rule does not bar evidence of *subsequent* negotiations, agreements or understandings offered to contradict, vary or modify the terms of the parties' written contract.  *See, e.g.*, *Kingsrow Enters., Inc. v. Metromedia, Inc.*, 1978 WL 952, at *2 n.3 (S.D.N.Y. Aug. 9, 1978) (holding that because the parol evidence rule does not bar evidence of later transactions or agreements, even if the contract is "integrated," evidence of subsequent modification is admissible to controvert its terms).

Plaintiffs argue that this Court should preclude any evidence of subsequent communications regarding Concept One's use of the Corona trademark on bags, or on other products not listed in the License Agreement.  Plaintiffs point to section 15 of the License Agreement, which requires that any amendment be "only in writing signed by both parties."  Diakos Decl. Ex. 1 (License Agreement).

However, even if an agreement requires amendments to be in writing, the agreement may be subsequently amended or modified by mutual assent.  Indeed, Concept One argues that Plaintiffs' internal documents, their conversations and correspondence with Concept One and the parties' performance and course of conduct establish that the License Agreement was subsequently modified to include bags.  "Even if a contract expressly provides for modifications to be in writing, an oral modification will be enforced where it has been fully performed."  *J & R Landscaping, Inc. v. Damianos*, 769 N.Y.S.2d 52, 53 (N.Y. App. Div. 2003); *see also Rose v. Spa Realty Assocs.*, 42 N.Y.2d 338, 343-44 (N.Y. 1977) ("a contractual prohibition against oral modification may itself be waived" when there is partial or complete performance, in accordance with the oral modification), quoted in *Valjean Mfg. Inc. v. Michael Werdiger, Inc.*, No. 03 Civ. 6185, 2004 WL 876056, at *1 n.2 (S.D.N.Y. Apr. 22, 2004).

---

[1] Concept One also argues that the exception to the parol evidence rule for "mutual mistake" applies here.  The sole basis for this argument appears to be that the parties' attorneys did not review the License Agreement before its execution and so both parties mistakenly left "bags" off the list of approved products.  That "mutual mistake" occurred here, however, is hardly plausible, as legal expertise could not have been necessary for the parties to understand that only the products listed in Exhibit B to the License Agreement were permitted to bear the Corona trademark.  That additional products were handwritten on Exhibit B and initialed by the parties bolsters this conclusion.

3

### 1.     The Evidence Sought to Be Admitted

Because, as set forth above, the law applies differently to communications that took place before and after the agreement, it would be useful to designate the evidence that Concept One seeks to admit as either pre- or post-License Agreement.  Such a task is problematic, however, because the License Agreement bears no date; it merely provides that "the Parties have signed this Agreement to be effective as of January 1, 2007."  The License Agreement is signed by Jean Marie Ruffini ("Ruffini") and Juan Fernandez ("Fernandez") for Marcas Modelo and by Sam Hafif ("Hafif") for Concept One.  In his deposition, Ruffini testified both that he signed the License Agreement on or about January 1, 2007 and that he did not recall when he signed it.  Ruffini Dep. 105:20-106:3, Mar. 31, 2008, Ex. C to Tokayer Decl.  Fernandez testified that he signed the License Agreement sometime during approximately the last two months of 2006.  Fernandez Dep. 131:6-7, Apr. 8, 2008, Ex. C to Tokayer Decl.

Concept One seeks to admit an email exchange dated November 1, 2006 between Hafif and Ruffini, who signed the email as an employee of Procermex Inc. ("Procermex").  Procermex was an affiliate of Cerveceria Modelo's parent company and the licensor of the Corona trademark through 2006, until Marcas Modelo became the new licensor in January 2007.  Hafif of Concept One tells Ruffini that he "noticed bags fell out of the contract" and inquires "was that intentional?"  He goes on to explain, "We've got a GREAT handbag business going, I'd hate to lose it."  Ruffini replies, "I think we can add these in Exhibit B and e-mail to you."  *See* Diakos Decl. Ex. 2.  It is not clear whether this email pre- or post-dates the execution of the License Agreement.

Concept One also seeks to admit a letter dated December 12, 2006, from Fernandez of GModelo USA LLC, which appears to be an affiliate of Plaintiffs, to Hafif of Concept One.  In that letter, Fernandez tells Hafif that "all of the previous designs that were approved by Procermex for sale by your company will continue to be authorized for 2007 under the new Marcas Modelo Agreement as long as they meet the new guidelines established by Marcas Modelo."  Tokayer Decl. Ex. B.  Concept One's license agreement with Procermex was for headwear and bags.  Tokayer Decl. Ex. A (license agreement between Procermex and Concept One).  It is not clear whether this letter pre- or post-dates the execution of the License Agreement.

In an email dated January 11, 2007 to Concept One and other recipients, Ruffini attaches a spreadsheet that lists the authorized licensees "working under Marcas Modelo . . . for 2007."

The spreadsheet contains a long list of "Products," which include bags.  Tokayer Decl. Ex. E. Again, in January 22, 2007, Ruffini sent a similar spreadsheet, containing lists of licensees and products, including bags, to Concept One and other recipients.  *Id.*

In an email dated February 5, 2007 from Fernandez of GModelo USA LLC to Hafif of Concept One, Fernandez attaches a third spreadsheet, which lists the names of seventeen companies, including Concept One, alongside each company's contact information and each company's "products."   Concept One's particular "products" are "Headwear-Hats, Beanies, Bags[,] Umbrellas."  *Id.*  Concept One also seeks to admit the identical versions of these three spreadsheets that were saved in Plaintiffs' internal computer files.  Tokayer Decl. Ex. D.

Concept One also seeks to admit reports of royalties owed that Concept One submitted to Procermex in January, February and March of 2007 and to Marcas Modelo in April and May of 2007.  The royalty report for each month shows a number of bags bearing the Corona trademark that were sold by Concept One and for which Concept One indicated it owed royalties to the licensor.  Tokayer Decl. Ex. G.  It should be noted that Concept One's sales of bags in these months is not conclusive evidence that Plaintiffs assented to a modification of the License Agreement to permit bags, but without more it is some evidence and will be admitted.  Plaintiffs claim that the first six months of 2007 were a transition period, during which Plaintiffs permitted licensees to continue to sell their inventory of Corona-branded products that had been approved in 2006.  Pls.' Pretrial Mem. at 5.  For Concept One, such products would include bags, since bags were a licensed product under its license agreement with Procermex.

Finally, Concept One seeks to admit its design proposals, and Marcas Modelo's responses, for bags bearing the Corona trademark that it submitted to Marcas Modelo in February, March, April and July of 2007.  All the submissions show that the proposal was either not approved or pending approval, but in all cases at least one of several Marcas Modelo reviewers approved the proposal, even though it was for a bag.  Tokayer Decl. Ex. H.

### 2.    *Plaintiffs' Motion Is Denied in Part and Granted in Part*

The pattern of the parties' communications as revealed in the evidence described above is relevant to Concept One's defenses of consent, estoppel, waiver, and acquiescence, and therefore all the evidence, regardless of its date, is admissible for those purposes.

With regard to the November 1, 2006 email exchange, it seems highly unlikely that this took place before the License Agreement was signed.  Therefore, absent further proof of the date of the agreement, the parol evidence rule bars the admission of this email exchange to contradict,

vary or modify the terms of the License Agreement.  Because the letter dated December 12, 2007 appears to be very close to the time of the execution of the License Agreement, it, too, may not be used to contradict, vary or modify the terms of the License Agreement under the parol evidence rule.  It is a stretch to believe that the parties would have executed the License Agreement in, for example, late November or early December and then, only a couple weeks later, agreed to modify it even before it took effect.

However, the communications that took place after January 1, 2007, the effective date of the License Agreement, are admissible for the purpose of showing mutual assent to a modification of the agreement.  As the License Agreement itself is unambiguous and easily understood, and the communications sought to be admitted here are few in number and also relatively short and simple, the jury is not likely to be confused by this evidence.

**B.      Plaintiffs' Motion to Preclude Defendant's Expert on Licensing from Testifying**

In her expert report dated August 18, 2008, Schlansky, Concept One's expert witness on licensing, opines on the quality of Concept One's products and on Marcas Modelo's approval and licensing procedures.  Schlansky's report is based on insufficient facts, employed no evident methodology, incorporates comments by Concept One's trial lawyer, and draws legal conclusions.  For these reasons, she will not be permitted to testify.

Pursuant to Fed. R. Evid. 702, expert witness testimony is admissible only if (1) the testimony is based upon sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the witness has applied the principles and methods reliably to the facts of the case.  It is well-settled that "experts may not invade the court's province by testifying on issues of law." *LinkCo, Inc. v. Fujitsu Ltd.*, 2002 WL 1585551, at *1 (S.D.N.Y. 2002).

The Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), held that a court must determine the admissibility of scientific evidence by evaluating the validity of (1) its scientific method, and (2) the application of that method to the factual inquiry under consideration.  Also, repeated applications of the method must produce consistent results.  The *Daubert* court provided a non-exclusive checklist for these inquiries: (1) Can the theory or technique be tested, and if so, has that testing

taken place?  (2) Has it been described in scientific publications subject to peer review?  (3) What are its known or potential error rates?  (4) Are there standards that can control its operations, and if so, were they used in developing the expert's testimony?  (5) Has it achieved some degree of acceptance in a relevant community?

In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), the Court held that the holding in *Daubert* applies to *all* expert testimony.  It also reiterated that not all of the factors set out in *Daubert* need be applied in every case, and that factors other than those can also be used by a trial court in assessing reliability of expert testimony.

Plaintiffs argue Schlansky should be excluded from testifying at trial because she failed to use any objective methodology or reasoning to reach her conclusions, Concept One and its counsel had substantial input into her work and conclusions, offering only selective information that skewed her findings, and she drew inappropriate legal conclusions.

Schlansky is a self-employed licensing consultant.  In preparation for her report, Schlansky visited Concept One's showroom and examined 125 to 150 products that Concept One selected for her review in a conference room.  Schlansky Dep. at 45.  She simply looked at the products and did nothing else.  *Id.* at 46.  She did not make any notes or prepare a written summary of what products she examined or what she did.  *Id.* at 45.  She did not conduct any objective research, such as a blind study to have others examine the products without knowing the purpose of the examination.  *Id.* at 169-70.  Plaintiffs argue, further, that the fact that Schlansky has worked with Concept One as a licensing consultant for a major national retailer undermines the objectivity of her conclusions.  *See id.* at 12-14, 43.

Schlansky confirmed that Concept One's trial lawyer had input into the report, that she received comments from him on a number of occasions, and that in some instances she made changes to the report based on his comments.  *Id.* at 72-73.

Finally, in her report, she draws legal conclusions: "The failure to approve a 2007 design on the basis that it may be sold in 2008 pursuant to the contract's sell-off period is in direct violation of the terms of Concept One's license agreement with the licensor of

the Corona brand." Schlansky Report ¶ T.

Schlanksy's own account of her "expert" review, to which she testified in her deposition, is thus sufficient to persuade me that the factors as set forth in the Federal Rules of Evidence, *Daubert* and *Kumho* have not been satisfied, and Schlansky will not be permitted to testify, nor her expert report to be introduced at trial.

## IV. CONCLUSION

This Court, therefore, preliminarily DENIES in part and GRANTS in part Plaintiffs' motion *in limine* to preclude Concept One from introducing written or oral extrinsic evidence that expands, varies or alters the products that Concept One was authorized to sell under the License Agreement. Plaintiffs may renew this motion at trial. This Court also GRANTS Plaintiffs' motion to preclude Defendant's expert on licensing, Schanlsky, from testifying at trial.

The Clerk of the Court is instructed to close all motions *in limine*.

**IT IS SO ORDERED.**
**New York, New York**
**August 2 5, 2008**

U.S.D.J.

8